# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **J-C-R-M**, an adult,<br><br>                 Petitioner,<br><br>       v.<br><br>**CAMMILLA WAMSLEY**,[1] Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; **TODD LYONS**, Acting Director of Immigration and Customs Enforcement; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; **KRISTI NOEM**, Secretary of the Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **PAMELA BONDI**, Attorney General of the United States,<br><br>                 Respondents. | Case No. 3:25-cv-990-SI<br><br>Agency No. AXXX-XXX-473<br><br>**OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS** |

Stephen W. Manning, Tess Hellgren, Jordan Cunnings, and Nelly Garcia Orjuela, INNOVATION LAW LAB, 333 SW Fifth Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Petitioner.

Scott E. Bradford, United States Attorney; and Joshua Keller and Ariana N. Garousi, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Respondents.

---

[1] The Court substitutes Cammilla Wamsley in place of Drew Bostock under Rule 25(d) of the Federal Rules of Civil Procedure.

**Michael H. Simon, District Judge.**

Petitioner J-C-R-M, a citizen of Venezuela, came to the United States seeking protection because he feared for his life after opposing the Venezuelan government. Petitioner presented himself to officers of the U.S. Customs and Border Protection agency ("CBP"). Petitioner used a "CBP One" mobile app on his phone to make arrangements to enter the United States to seek asylum. He entered at the port of entry in El Paso, Texas, on the date scheduled.

Upon presentation at the port of entry, Petitioner was subject to mandatory detention because he had no visa or other entry papers. He was then interviewed by CBP officers to review his potential asylum status and determine whether he presented a security risk or a risk of absconding. Based on Petitioner's individualized facts and circumstances, he was granted permission lawfully to enter (also known as being "paroled into") the United States for two years while he pursued his applications for asylum and withholding of removal under the Convention Against Torture ("CAT"). Respondents also initiated removal proceedings under 8 U.S.C. § 1229a. Thus, on October 20, 2024, Petitioner was permitted lawfully to enter and remain in the United States, at least through October 19, 2026, while his immigration proceedings progressed. So far, everything had been done precisely as Congress had directed under federal immigration laws, including 8 U.S.C. §§ 1182(d)(5) and 1225.

Petitioner originally was directed to appear for his first immigration court hearing in El Paso, Texas, on March 3, 2025. The El Paso immigration court, however, approved Petitioner's request to change venue to Portland, Oregon, where he moved to live with family. The Portland immigration court rescheduled Petitioner's first hearing for June 10, 2025. Immigration authorities also issued Petitioner an employment authorization card, which allowed him legally

to work in the United States. This work permit was valid through October 19, 2025, the duration of his parole.

Petitioner lived in Oregon while waiting to pursue his asylum proceedings. He complied with all of the requirements of his parole. He never committed any crime. On June 10, 2025, he arrived for his first immigration court hearing. At the hearing, the government moved to dismiss Petitioner's § 1229a removal proceedings and the immigration judge granted the motion, over Petitioner's objection. Petitioner was then detained by masked officers from U.S. Immigration and Customs Enforcement ("ICE").

Shortly after his arrest, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). The Court promptly entered an Order requiring that Respondents not move Petitioner out of the District of Oregon without providing advance notice to the Court. Because ICE does not have a detention center in Oregon, Respondents released Petitioner on "interim parole."[2]

Petitioner now requests that the Court grant his Petition on Count Two, alleging that his detention violated the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA") and its implementing regulations. Respondents raise only two arguments in response to the Petition—that the Court lacks jurisdiction to consider the Petition because Petitioner was released after filing the Petition and ICE provides sufficient assurance that it will not redetain Petitioner, and the Court should, as a prudential matter, deny the Petition because Petitioner failed to exhaust administrative remedies.[3] For the following reasons, the Court rejects the government's two arguments and thus grants the Petition on Count Two.

_____

[2] In an email to the Court dated June 11, 2025, an attorney for the government stated that Petitioner was "released from custody yesterday because ICE does not have a detention center in Oregon."

[3] Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents waived such challenges and conceded those aspects of the Petition. *See*

PAGE 3 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

**BACKGROUND**

**A.  Habeas Corpus Petitions Under 28 U.S.C. § 2241**

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).

**B.  Factual Background**

Petitioner is a Venezuelan national who opposed the Venezuelan government and fled, fearing for his life. Declaration of Petitioner ("Pet. Decl.") ¶ 3 (ECF 20). People who oppose the Venezuelan government are tortured, imprisoned, and killed. ECF 20-2 at 7. Petitioner first fled to Ecuador, where his life was threatened by the violent "Los Lobos" gang. *Id.* at 6. After making an appointment through the "CBP One app" for entry into the United States, on October 20, 2024, Petitioner came to the port of entry at El Paso, Texas and explained that he was seeking asylum and withholding from removal under the CAT. *See* Pet. Dec. ¶ 4; ECF 20-4.

---

*Soleimani v. Larose*, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) ("On the claims Petitioner does raise, namely an unlawful search and seizure claim under the Fourth Amendment, an unlawful detention claim under the APA, and a procedural due process claim under the Fifth Amendment, Respondents' answer to the Petition is silent. By failing to respond to the claims actually asserted, Respondents have conceded the claims. With that concession, and given the undisputed facts of this case, the Court grants the Petition." (citations omitted)); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession.").

At the port of entry, Petitioner was deemed inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I)

because he was not in possession of valid entry documents. *See* ECF 20-1 at 4 (citing INA

Section 212(a)(7)(A)(i)(I), which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)).

Petitioner, however, was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A).

*See* ECF 20-1 at 1 (citing that Petitioner was paroled under INA Section 212(d)(5), which is

codified at § 1182(d)(5)). This allows a noncitizen to be admitted into the United States

temporarily, until "the purposes of such parole shall, in the opinion of the Secretary of Homeland

Security, have been served." 8 U.S.C. § 1182(d)(5)(A). Petitioner was thus released from

custody. He also was not placed into "expedited removal" under § 1225(b)(1) but was instead

placed into regular § 1229a removal proceedings under § 1225(b)(2). *See* ECF 20-1 at 1 (citing

that Petitioner was to appear "[i]n removal proceedings under Section 240 of the [INA]," which

is codified at § 1229a).[4] He was ordered to appear for his first court hearing on March 3, 2025, in

El Paso, Texas. *Id.* Petitioner later requested that venue be changed to immigration court in

Portland, Oregon, which was approved. ECF 20-5. His first hearing was then postponed until

June 10, 2025, in Portland. ECF 20-6. On April 10, 2025, Petitioner timely filed his application

for asylum and withholding of removal under the CAT. ECF 20-2.

---

[4] When a noncitizen is deemed inadmissible under § 1182(a)(7), the immigration officer must order the noncitizen's removal, unless the noncitizen indicates an intention to apply for asylum or fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). The noncitizen may be placed in "expedited removal" proceedings, which contain a truncated asylum process and require that the noncitizen remain detained throughout the process. *Id.* §1225(b)(1). The noncitizen also may be placed in 8 U.S.C. § 1229a removal proceedings, which have more robust due process protections, although the noncitizen again generally remains detained throughout the process, unless paroled. *Id.* § 1225(b)(2). Petitioner was placed in § 1229a removal proceedings, so he was processed under 8 U.S.C. § 1225(b)(2). He was then paroled under 8 U.S.C. § 1182(d)(5)(A).

On November 7, 2024, Petitioner was issued a work authorization that was valid from November 6, 2024, through October 19, 2025. Pet. Decl. ¶ 6; ECF 25. This work permit was based on his status as someone who had been paroled into the United States, and its duration mirrored the length of his parole. Petitioner lived with family in Beaverton, Oregon while waiting to pursue his immigration case. *Id.* ¶ 7.

On June 10, 2025, Petitioner appeared for his first immigration court hearing on his § 1229a removal proceedings. *Id.* ¶ 11. At the hearing, the government orally moved for dismissal of the removal proceedings, including Petitioner's asylum application, based on changed circumstances. *Id.* ¶ 13; ECF 20-3. Petitioner objected, and asked for time to consult with an attorney. Pet. Decl. ¶ 13. The immigration judge "paused" and then dismissed Petitioner's case. *Id.* The immigration judge issued a generic form opinion consistent with opinions issued in other immigration cases, finding the government's reasons for dismissal "more persuasive" and dismissing Petitioner's removal proceeding without prejudice. *See* ECF 20-3 (written decision of the immigration judge).

Petitioner felt helpless and stressed, and was worried that he would be detained and deported, but a volunteer attorney appeared to assist Petitioner. *See* Pet. Decl. ¶¶ 14-15. As Petitioner and his attorney left the courtroom to meet in a private room, Petitioner saw three masked men waiting in the hallway. *Id.* ¶ 15. When Petitioner left the private room, he was arrested by several masked agents. *Id.* ¶¶ 16-17.

Petitioner had never committed a crime, had never been arrested, had complied with the terms of his immigration parole, and was afraid. *Id.* ¶¶ 17-18. His cell phone and belongings were taken, and he was handcuffed, and then later fingerprinted and his feet were shackled. *Id.* ¶¶ 17, 20. His attorney filed in this Court his habeas Petition. ECF 1. Before Petitioner was

removed from Oregon for further processing or detention, the Court issued an Order requiring

that Petitioner not be removed from the District of Oregon without advance notice to the Court.

*See* ECF 4. Oregon has no ICE detention center, so Petitioner was then released on "interim

parole." *See* Pet. Decl. ¶ 21; Declaration of Jeffrey ("Chan Decl.) ¶ 7 (ECF 17).

Petitioner was not released subject to his original parole. He was issued on June 10, 2025,

an "Interim Notice Authorizing Parole," which states it is under 8 U.S.C. § 1182(d)(5)(A) and is

valid for only one year. ECF 20-8. It thus expires on June 9, 2026, before his original parole and

work authorization, which expired on October 19, 2026. His "interim parole" also is "subject to

the terms and conditions of [his] release." *Id.*

In his Petition, Petitioner requests, among other relief, that the Court: (1) declare that

Petitioner's detention without an individualized determination violates the Fifth Amendment's

Due Process Clause; (2) declare that Respondents' actions with respect to Petitioner's removal

proceedings and subsequent detention were illegal; (3) issue a Writ of Habeas Corpus ordering

Petitioner's release from custody; (4) issue an Order prohibiting Respondents from transferring

Petitioner out of the District of Oregon without prior approval of the Court; (5) award Petitioner

his attorney's fees and costs; and (6) grant any other relief that the Court deems just and proper.

In his reply, Petitioner requests alternative relief, should the Court find his originally-requested

relief too broad, of ordering that (1) the revocation of Petitioner's parole without an

individualized determination was unlawful; (2) Respondents may not redetain Petitioner unless

an authorized official under 8 C.F.R. § 212.5(e)(2)(i) makes an individualized finding of

probable cause that Petitioner is a flight risk or a danger to the community and properly

terminates his parole; and (3) Respondents may not remove Petitioner from the District of

Oregon without 30 days' notice so that Petitioner may commence an appropriate habeas proceeding.

On June 23, 2025, Petitioner filed an appeal with the Bureau of Immigration Appeals ("BIA") of the immigration judge's decision. ECF 18-1. Jeffrey Chan, Assistant Field Office Director for ICE Office of Enforcement and Removal Operations ("ERO") in Portland, Oregon states under oath that ICE will not redetain Petitioner "through the adjudication of his pending BIA appeal, absent criminal activity, failure to comply with release requirements set by ERO, or a change in Petitioner's pending case with the BIA." Chan Decl. ¶ 8.

## DISCUSSION

### A. Whether the Court Has Jurisdiction to Review This Matter

Respondents argue that the Court lacks jurisdiction to review this matter because Respondents have released Petitioner from custody. Respondents contend that now that Petitioner no longer is in custody, this case falls outside the core of habeas because the case no longer seeks to release Petitioner from confinement, quoting *Preiser* and *Pinson v. Carvajal*, 69 F.4th 1059, 1072 (9th Cir. 2023). Petitioner, however, was confined at the time he filed his Petition and is seeking release based on alleged unlawful confinement. Thus, his case is unlike *Pinson* and goes to the "core" of habeas as defined by the Supreme Court in *Preiser*. *See* 411 U.S. at 489; *see also Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the [Alien Enemies Act], their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)).

In *Pinson*, the petitioners were challenging conditions of their confinement during the COVID-19 pandemic. After considering "whether, based on the allegations in the petition,

release is *legally required* irrespective of the relief requested," the Ninth Circuit determined that it was not. *Pinson*, 69 F.4th at 1072-75 (emphasis in original). Thus, the case was not reviewable in habeas. *Id.* at 1075. Indeed, the court in *Pinson* emphasized that "[r]elease is the only available remedy—and thus a claim is at the core of habeas—if a successful petition demonstrates that the *detention itself* is without legal authorization." *Id.* at 1070 (emphasis in original). That is precisely what Petitioner here asserted in his Petition.

Petitioner remains "in custody" for purposes of § 2241 because he challenges Respondents' authority to revoke his parole and detain him. Under § 1182(d)(5)(A) and its governing regulations, upon written notice, DHS may terminate parole "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). DHS has issued guidance on what it means for the presence of an asylum seeker, such as Petitioner, not to be in the "public benefit." As explained by U.S. District Judge James E. Boasberg,

> In 2009, DHS issued the "Parole Directive," which further fleshes out when, precisely, it is in the "public benefit" for an asylum-seeker to be paroled. *See* ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009). According to the Directive, if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention "is <u>not</u> in the public interest," and thus ICE "<u>should</u>, absent additional factors . . . parole the alien." *Id.*, ¶ 6.2 (emphases added).

*Mons v. McAleenan*, 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019) (alterations in original); *see also* 8 C.F.R. § 212.5(b) (noting that parole is only appropriate for noncitizens who are "neither a security risk nor a risk of absconding").

Respondents do not argue that they complied with § 1182(d)(5)(A) or 8 C.F.R. § 212.5(e)(2)(i). But that they have conceded the merits of Petitioner's claims only further

highlights the validity of Petitioner's underlying challenges to Respondents' authority to revoke Petitioner's parole and detain him. *See Jimenez v. Bostock*, 2025 WL 2430381, at *3 (D. Or. Aug. 22, 2025) ("Here, Petitioner alleges that the revocation of his release from custody without an individualized determination—made by an authorized official—that he is a danger to the community or a flight risk violated the APA and his right to procedural Due Process under the Fifth Amendment. These claims for relief, which are focused on statutory and regulatory provisions relating to custody decisions, squarely address the validity of Petitioner's confinement in the first place, not the conditions of it. . . . A review of all the Claims for Relief, including the legal basis for them, squarely relate to the validity of Petitioner's confinement. That Petitioner prays for additional relief beyond the custody issue does not change the fact that the crux of the Petition is that the revocation of his release violated the law.").

Further, Petitioner argues that Respondents did not release him on similar terms as his original conditional parole, creating "collateral consequences." *See, e.g.*, *Abdala v. I.N.S.*, 488 F.3d 1061, 1064-65 (9th Cir. 2007) (describing the "collateral consequences" doctrine, where so long as a petitioner was in custody at the time a petition was filed and remains subject to actual collateral consequences that the petition could successfully address, his petition remains live); *Devitri v. Cronen*, 290 F. Supp. 3d 86, 90 (D. Mass. 2017) (finding habeas jurisdiction proper where the petitioners "challenge[d] a condition of their custody, specifically, ICE's abrupt change in policy regarding participants in Operation Indonesian Surrender and the unfairly compressed timetable of the issuance of the Denials of Stays and/or Notices of Revocation of Release." (cleaned up)). Thus, Petitioner remains in Respondents' custody despite his release on "interim parole" for one year.

The more apt question is whether Respondents' temporary release of Petitioner *after* he filed his Petition renders his case moot. Respondents contend that it is unclear whether the "voluntary cessation" exception to mootness applies in a habeas case, relying on *Picrin-Peron v. Rison*, 930 F.2d 773 (9th Cir. 1991). This exception requires that a party claiming mootness based on the voluntary cessation of conduct has a "heavy" burden to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719-20 (2022) (quotation marks omitted). Respondents also argue that even if the voluntary cessation exception to mootness does apply to habeas cases generally, it would not bar the Court from finding this case moot because Respondents have met their burden to show that it is absolutely clear that they will not redetain Petitioner, based on the sworn statement of Jeffrey Chan. The court rejects Respondents' arguments.

The voluntary cessation exception applies in the habeas context. In *Picrin-Peron v. Rison*, the Ninth Circuit declined to "decide whether the voluntary cessation exception to the mootness doctrine applies in habeas corpus cases." 930 F.2d at 776. The Ninth Circuit, however, has since applied the exception to an immigration habeas case. *See, e.g.*, *Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) ("The voluntary cessation exception to mootness applies because—absent action by this court—the government could redetain Diouf, and deny him a bond hearing, at any time. The government has offered no assurance that Diouf will not be redetained; *Picrin-Peron v. Rison*, is therefore distinguishable." (citations omitted)), *abrogated in part on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018). Further, the Supreme Court has indicated that the doctrine applies in habeas cases. *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025) (rejecting that the government's agreement not to remove the petitioners

PAGE 11 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

while their habeas petitions were pending mooted the case, citing the voluntary cessation

doctrine).

Respondents' conduct does not moot Petitioner's claim under the voluntary cessation

doctrine. A defendant has a "formidable burden" of meeting the voluntary cessation exception

because "a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the

defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601

U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

U.S. 167, 189 (2000)). For voluntary cessation to serve to moot a case, Petitioner's "release from

custody [must] completely and irrevocably eradicate[] the effects of the alleged violation,"

*Corral v. Barr*, 776 F. App'x 953, 954 (9th Cir. 2019) (quotation marks omitted), such that

"successful resolution of [his] pending claims could no longer provide the requested relief,"

*Abdala*, 488 F.3d at 1065. That is not the case here, as Petitioner still has viable claims

challenging Respondents' authority to detain Petitioner.

Further, Petitioner has valid challenges to the scope of his current temporary release.

Petitioner has only been released on "interim parole" for one year. That is shorter in duration

than his previous release. It also is unclear what statutory provision Respondents deem governs

Petitioner for this "interim parole"—1225(b)(2), under which Petitioner originally was in

custody as newly arrived noncitizen "seeking admission,"[5] and includes due process rights, or 8

---

[5] Notably, now that Petitioner has been in the United States and is in removal
proceedings, it appears that any new evaluation of Petitioner's custody and parole would be
governed by 8 U.S.C. § 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018)
(explaining that for noncitizens who are "present in the country" but "were inadmissible at the
time of entry . . . . Section 1226 generally governs the process of arresting and detaining [them]
pending their removal" and summarizing that "U.S. immigration law authorizes the Government
to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" but
that it "authorizes the Government to detain certain aliens already in the country pending the
outcome of removal proceedings under §§ 1226(a) and (c)"); *see also id.* at 297, 303 ("As noted,

U.S.C. § 1225(b)(1), which is the expedited removal provision and includes much less

protection. Respondents do not provide detail regarding Petitioner's case, but the immigration

judge's opinion specifically contemplates placing Petitioner into expedited removal, and DHS

has regularly done so with asylum seekers who have been paroled or released on their own

recognizance. Courts have routinely rejected this process as unlawful. *See, e.g.*, *Perez v.

LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025) (gathering cases); *Rodriguez

Cabrera v. Mattos*, --- F. Supp. 3d ----, 2025 WL 3072687, at *3 (D. Nev. Nov. 3, 2025)

(explaining that "[t]he overwhelming majority" of courts have rejected this contention (gathering

cases)). The Court need not decide these issues because Respondents do not dispute the merits of

Petitioner's claims. But the lack of parity between Petitioner's original parole and "interim

parole" and apparent difference in the basis of his release shows that his current "interim parole"

does not moot his claims.

Additionally, the declaration of Mr. Chan does not suffice to moot Petitioner's claims.

Mr. Chan only commits to release for one year (through June 10, 2026) or through the BIA

appeal.[6] Petitioner's original parole expired October 19, 2026, but upon expiration it would have

to be renewed unless an appropriate official found "neither humanitarian reasons nor public

benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(1)-

---

§ 1225(b) applies primarily to aliens seeking entry into the United States. . . . As noted, § 1226 applies to aliens already present in the United States."). Section 1226 has its own conditional parole. *See* 8 U.S.C. § 1226(a)(2). The Court, however, need not address the proper statutory basis for Petitioner's parole because Respondent's do not challenge the merits of the Petition and the Court concludes that Respondents' revocation of Petitioner's existing parole was unlawful.

[6] Mr. Chan both states that Petitioner's parole is valid for one year and that ICE will not redetain Petitioner for the duration of his BIA appeal, subject to certain caveats. It is unclear, however, what ICE will do if Petitioner's BIA appeal lasts for longer than one year. Will ICE renew Petitioner's interim parole or detain him because his interim parole expired? Mr. Chan's two statements are not necessarily harmonious, let alone reassuring.

(2). Mr. Chan also does not simply state that ICE will not redetain Petitioner until the BIA

determination unless he engages in criminal activity. Instead, Mr. Chan adds the equivocal

statements that ICE will not redetain Petitioner absent "failure to comply with [unidentified]

release requirements set by ERO" and absent an unspecified "change in Petitioner's pending case

with BIA." This is unlike the statement in *Picrin-Peron*, in which the ICE official stated that the

petitioner would remain paroled absent involvement with the criminal justice system or his

ability to return to Cuba or a third country willing to take him. Mr. Chan's equivocal statements

are particularly concerning given DHS's new policy focused on detaining millions of noncitizens

who otherwise would not have been subject to detention.[7] *See, e.g.*, *Rodriguez Cabrera*, 2025

WL 3072687, at *3 (describing DHS's "sweeping new policy [that] subjects *millions* of

undocumented residents to prolonged detention without the opportunity for release on bond, in

---

[7] In July 2025, ICE issued a memorandum describing a new policy. *See, e.g.*, U.S.
IMMIGR. AND CUSTOMS ENF'T, Interim Guidance Regarding Detention Authority for Applications
for Admission (July 8, 2025) (hereinafter "ICE Memo"), *available at* https://perma.cc/5GKM-
JYGX (AILA Doc. No. 25071607). The Court in *Rodriguez* explained this new policy:

> On July 8, 2025, DHS issued a notice entitled 'Interim Guidance Regarding
> Detention Authority for Applicants for Admission' to all ICE Employees. The
> Notice indicated that DHS, in coordination with the Department of Justice,
> 'revisited its legal position' on the INA and determined that Section 235 [codified
> at § 1225], rather than Section 236 [codified at § 1226], is the applicable
> immigration authority for any alien present in the United States 'who has not been
> admitted . . . whether or not at a designated port of arrival.' Accordingly, 'it is the
> position of DHS that such aliens are subject to [mandatory] detention under INA
> § 235(b) and may not be released from ICE custody except by INA § 212(d)(5)
> parole.' The Notice further provides '[t]hese aliens are also ineligible for a
> custody redetermination hearing ('bond hearing') before an immigration judge
> and may not be released for the duration of their removal proceedings absent a
> parole by DHS. For custody purposes, these aliens are now treated in the same
> manner that 'arriving aliens' have historically been treated.

*Rodriguez Cabrera*, 2025 WL 3072687, at *3 (first two alterations added, remaining
alterations in original) (footnotes omitted) (quoting ICE Memo).

contravention of decades of agency practice and robust due process protections hitherto afforded to such residents to enable them to challenge the government's basis for detaining them" and explaining that "[t]he overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful" (gathering cases) (emphasis in original); *J.M.P. v. Arteta*, 2025 WL 2984913, at *2 (S.D.N.Y. Oct. 23, 2025) (ordering the government to release a noncitizen after the government engaged in "unilateral[]" and "essentially *ex parte*" conduct to improperly stay an immigration judge's order to release the noncitizen on bond, after a federal court had granted habeas requiring that bond hearing).

Mr. Chan's statement does not make it "absolutely clear" that Petitioner will not be improperly redetained. *See Friends of the Earth*, 528 U.S. at 189. Courts have rejected arguments of mootness in recent immigration habeas cases, relying on the voluntary cessation doctrine. *See, e.g.*, *Bautista v. Santacruz*, --- F. Supp. 3d ----, 2025 WL 3289861, at *4-5 (C.D. Cal. Nov. 20, 2025); *Del Cid v. Bondi*, 2025 WL 2985150, at *10-11 (W.D. Pa. Oct. 23, 2025); *A.S.R. v. Trump*, 782 F. Supp. 3d 224, 237-38 (W.D. Pa. 2025). Respondents' argument that the Court lacks jurisdiction fails.

## B.  Failure to Exhaust Administrative Remedies

Respondents' remaining argument is that Petitioner failed to exhaust his administrative remedies. "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Although 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). The Court "may waive the prudential exhaustion requirement if

administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quotation marks omitted).

Petitioner argues that exhaustion is inapposite because he is not challenging an immigration judge's decision, but is challenging Respondents' revocation of his parole, which is not part of the immigration judge's decision on appeal before the BIA. Petitioner also argues that exhaustion is futile because even if the BIA affirms dismissal of his § 1229a proceedings, that is not one of the enumerated grounds for revoking parole and would not resolve the question of whether he was appropriately detained under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9).

The Court finds that further administrative review would be futile. The many similar cases to Petitioner's shows "DHS and DOJ's commitment to the positions" taken in this case. *Cf. Bautista*, 2025 WL 2670875, at *8. Additionally, the BIA decision of *Matter of Yahure Hurtado*, 29 I & N. Dec. 216 (BIA 2025), in which "the BIA adopted the government's new interpretation of § 1225(b)(2) and held [immigration judges] have no authority to consider bond for any individual who entered the country without inspection" demonstrates that if Petitioner attempted to raise these issues before the BIA, it would be futile. *See Ramirez v. Noem*, 2025 WL 3270137, at *5 (D. Nev. Nov. 24, 2025) (describing *Yahure Hurtado* and finding futility for administrative exhaustion); *see also Faizyan v. Casey*, 2025 WL 3208844, at *4 (S.D. Cal. Nov. 17, 2025) (finding futility because of *Yahure Hurtado* (gathering cases)); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (cleaned up)).

PAGE 16 – OPINION AND ORDER GRANTING PETITION FOR HABEAS CORPUS

"Additionally, considering [Petitioner's] due process challenge to [his] detention without the opportunity for release on bond, this matter falls into the futility exception to the exhaustion requirement 'carved for constitutional challenges to . . . [DHS] procedures.'"[8] *Ramirez*, 2025 WL 3270137, at *6 (quoting *Iraheta-Martinez v. Garland*, 12 F.4th 942, 949 (9th Cir. 2021) (last two alterations in *Iraheta-Martinez*)). As explained by the court in *Ramirez*, for "procedural due process claims in particular, '[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken.'" *Id.* (alterations in original) (quoting *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam); *see also id.* ("[N]either the [BIA] nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer[.]" (last two alterations in original) (quoting *Matter of G.K.*, 26 I. & N. Dec. 88, 96-97 (BIA 2013)).

Further, the factors for requiring prudential exhaustion are not met in this case. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Neither agency expertise nor an administrative appellate record is necessary to determine whether the federal voluntary cessation doctrine applies in this case (the only argument raised by Respondents other than exhaustion). Nor does resolution of this question encourage the bypass of the administrative process. To the contrary, a

---

[8] Although in his reply Petitioner asks the Court to grant his Petition on only his APA claim, the Court considers all the grounds raised in his Petition when considering whether exhaustion applies to his Petition as a whole.

federal district court decision on whether voluntary cessation applies may provide guidance to Respondents and reduce future cases requiring the bypass of the administrative process. *Cf. Bautista*, 2025 WL 2670875, at *7. Finally, the Court is "unconvinced" that Respondents would have self-corrected given their "unequivocal commitment" to their current position. *See id.*

## C.  Merits of the Petition

Because Respondents have not contested the merits of the Petition, the Court grants the Petition, as narrowed by Petitioner in his reply to Count Two.[9] The Court finds as unrebutted that Respondents violated the APA by failing to follow the INA, its governing regulations, and caselaw construing termination of parole under § 1182(d)(5) and 8 C.F.R. § 212(e)(2)(i). Respondents released Petitioner on parole, thereby finding that he was not a flight risk or a danger to the community and that his parole served the purposes of his asylum application. Respondents then unlawfully revoked that parole and detained him without due process, or a finding that the purposes of his parole had been served, that humanitarian reasons no longer supported his parole, or that he was a danger to the community or a flight risk (meaning that continuing parole would not be in the public benefit). *See Arias v. Larose*, 2025 WL 3295385, at * 4 (S.D. Cal. Nov. 25, 2025); *Perez*, 2025 WL 3171742, at *6-7 (gathering cases); *Salazar v. Casey*, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-47 (D. Or. 2025).

## D.  Remedy

The Court finds that the revocation of Petitioner's conditional parole and his detention was unlawful. Although Petitioner currently temporarily is released, that release is insufficient to protect Petitioner's rights under the INA and its governing regulations. Numerous courts have

---

[9] The Court expresses no opinion on the merits of any other count alleged in the Petition.

required that noncitizens in a similar position to Petitioner must be given notice and an individualized hearing before an appropriate official the noncitizen may be redetained. *See Salazar*, 2025 WL 3063629, at *6 & n.4 (gathering cases); *Rodriguez Cabrera*, 2025 WL 3072687, at *15. The Court finds this remedy to be appropriate. Further, given the unique situation with Oregon not having a detention center and the Court's jurisdiction over this matter, which is hereby retained under the All Writs Act, 28 U.S.C. § 1651, the Court additionally orders that Respondents must provide at least 30 days' notice before removing Petitioner from the District of Oregon, unless the Court orders otherwise, through the remainder of Petitioner's removal proceedings. *See Jimenez*, 2025 WL 2430381, at *7.

## CONCLUSION

The Court GRANTS the Petition for Writ of Habeas Corpus (ECF 1) based on Count Two and ORDERS that:

1.      Before any redetention of Petitioner, Respondents must provide Petitioner with written notice of the reasons for revocation of his parole and a hearing before an authorized official under 8 C.F.R. § 212.5(a) and must properly terminate Petitioner's parole under 8 C.F.R. § 212.5(e)(2)(i). Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

2.      During the pendency of Petitioner's removal proceedings, before Respondents may remove Petitioner out of the District of Oregon, Respondents must provide Petitioner and the Court with 30 days' notice, unless the Court orders otherwise.

**IT IS SO ORDERED**.

DATED this 9th day of December, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge